[Cite as *State v. Carter*, 2011-Ohio-2658.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   94967

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL CARTER

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-528720

**BEFORE:**   E. Gallagher, J., Sweeney, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    June 2, 2011

**ATTORNEY FOR APPELLANT**

Terrence K. Scott
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio   43215-2998

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    T. Allan Regas
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶ 1} Michael Carter appeals from his convictions rendered in the Court of Common Pleas.  Carter argues his convictions for gross sexual imposition in violation of R.C. 2907.05(A)(4) and unlawful sexual conduct with a minor in violation of R.C. 2907.04 were against the manifest weight of

the evidence.   For the following reasons, we affirm the trial court's judgment of conviction.

{¶ 2}  On October 5, 2009, a Cuyahoga County grand jury indicted Carter on four counts of rape pursuant to R.C. 2907.02; one count of kidnapping, pursuant to R.C. 2905.01; and three counts of gross sexual imposition, pursuant to R.C. 2907.05.   All counts contained sexually violent predator specifications and the kidnapping charge contained a sexual motivation specification.   Carter pleaded not guilty at his arraignment and elected to try his case before the court.   Carter's bench trial commenced on March 11, 2010.

{¶ 3}  The state of Ohio presented the testimony of five witnesses: K.W., the underage victim, Lekisha Scott, a Cuyahoga County Social Worker, Cleveland Police Department Detective Richard Durst, Cleveland Police Officer Mark Pesta and N.R., the mother of the underage victim.   The evidence presented by the State centered around four incidents where Carter sexually abused K.W.   However, as the trial court found Carter guilty of only two incidents of sexual abuse, for purposes of clarity, we will limit our discussion of the facts to those two incidents.

{¶ 4}  K.W., born April 26, 1994, testified that during the summer of 2006, Carter began sexually abusing her.   K.W. stated that during that

summer she was 12 years old and that she occasionally stayed with her aunt and uncle, Julia Roberts Carter and Michael Carter at their house located at 2921 Minnie Avenue, Cleveland, Ohio 44104. K.W. testified that one night during that summer, she was asleep on the couch when Carter sat down next to her and put his hands on her. K.W. reported that she pretended to sleep while Carter touched her breasts underneath her shirt and then went underneath her underwear and rubbed her vagina. K.W. testified that Carter did not say anything to her but made moaning noises when he touched her. Carter stopped touching K.W. when her phone rang. K.W. stated that she was scared and upset and that she did not report Carter's actions.

{¶ 5} K.W. also testified that Carter sexually abused her when she was 14 years of age. At the time of this incident, K.W. was visiting her aunt and Carter at their new residence located at 8114 Beman Avenue in Cleveland, Ohio 44105.[1] K.W. stated that she and her cousin D.R. were present in a room when Carter entered. She testified as follows:

{¶ 6} "He pulled the cover over me. He started touching again — touching me again, and I was moving him like — I mean, I was moving

_____

[1]Although the indictment charged count five as occurring between October 1, 2008 to December 31, 2008, the testimony adduced at trial indicates that this incident occurred sometime in January 2009.

around, trying to get him off of me, and he didn't get off of me. And he didn't [sic] start touching my pants. Then his hands started touching my breast again. Then went in my pants from the back, 'cause I was like laying on my side, and my boy shorts, and he put a hole in them. And he turned the hole in my boy shorts, and he put his fingers in me. And then I'm trying to move away, and he pulled me closer and he not letting me go." Tr. 53.

{¶ 7} K.W. clarified that during this incident, Carter inserted his fingers into her vagina.

{¶ 8} After this incident occurred, K.W. returned to her mother's house and eventually told her mother about Carter's actions. K.W. also told a Euclid police officer, who picked her up for truancy, of Carter's actions. K.W.'s mother, N.R., contacted the Cleveland Police Department and filed a police report.

{¶ 9} Lekisha Scott testified that she was the Cuyahoga County Social Worker assigned to K.W.'s case. Ms. Scott interviewed K.W., her mother, and Carter. Ms. Scott informed Carter of the nature of the allegations and he responded by stating that the allegations were untrue. Carter also provided Ms. Scott with a variety of reasons as to why K.W. would make false allegations against him.

{¶ 10} Cleveland Police Detective Richard Durst, assigned to the Sex

Crimes Unit, testified that he interviewed K.W.'s cousin, D.R. Detective Durst interviewed D.R. because K.W. reported that she screamed when Carter last abused her and that D.R. was in the room at the time. Although D.R. corroborated that she was in the room with Carter and K.W., D.R. did not answer any of the officer's questions or corroborate the allegations of sexual abuse made by K.W.

{¶ 11} Cleveland Police Officer Mark Pesta testified that K.W. and her mother reported the sexual abuse to him. Officer Pesta took K.W.'s statement, verified that Carter lived in Cleveland, and reported the abuse to the county child abuse hotline.

{¶ 12} K.W.'s mother, testified at trial that when K.W. informed her of Carter's actions, she took her daughter to the Euclid police station to report the incident. Ms. Roberts was eventually directed to the Cleveland Police Department where she gave her statement to Officer Pesta.

{¶ 13} The state rested its case at the conclusion of Ms. Roberts's testimony. Based on the evidence before the court, the trial judge dismissed two counts of rape pursuant to Crim.R. 29.

{¶ 14} The defendant presented the testimony of his wife, Julia Roberts Carter, D.R., and himself. Julia denied that the allegations occurred and blamed her sister, Ms. Roberts, for the allegations being brought against her

husband. Carter testified, stating that he was being set up by Ms. Roberts and denied the charges. Carter further stated that Ms. Roberts has tried to set him up in the past and was always trying to break up the relationship between himself and Julia. Furthermore, Carter stated that K.W. repeatedly phoned him and asked to visit, even after these alleged incidents of abuse occurred.

{¶ 15} The trial court granted the motion of acquittal pursuant to Crim.R. 29 as to Counts 1 and 8.

{¶ 16} The trial court found Carter guilty of gross sexual imposition of a person less than 13 years of age, a felony of the third degree under Count 2, but not guilty of the sexual predator specification in that Count, and unlawful sexual conduct with a minor, a felony of the third degree and a lesser included offense of the charge of rape under Count 5.[2] The court found Carter not guilty on the remaining charges and all attendant specifications. It is from this conviction that Carter appeals, raising a single assignment of error.

> "The trial court violated Michael Carter's rights to due process and a
> fair trial when it entered judgments of conviction for gross sexual
> imposition and unlawful sexual conduct with a minor, when those

---

[2]The conviction for gross sexual imposition related to the first instance of sexual abuse outlined above while Carter's conviction for unlawful sexual conduct with a minor related to the second instance of sexual abuse as described above.

judgments were against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution. (March 29, 2010 Judgment Entry; Tr. pp. 26, 27, 37, 41, 47, 48, 54, 97, 98, 99, 104, 105, 133, 138, 185)."

{¶ 17} In evaluating a challenge based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
>
> * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., at 387. (Internal citations omitted.)

{¶ 18} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing

court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995. (Internal citation omitted.)

{¶ 19} In reviewing the entire record, we cannot conclude that the trial court lost its way in convicting Carter of gross sexual imposition and unlawful sexual conduct of a minor. Carter contends that the victim was not credible as there was no physical evidence or eyewitness to corroborate her testimony. Because of the nature of the sexual abuse and the timeline of police involvement, it is not surprising that there was no physical evidence of the encounters. Additionally, although D.R. was present in the room for the second incident, she refused to answer any questions as to Michael Carter's contact with K.W. Accordingly, we cannot say whether D.R. witnessed the abuse or not.

{¶ 20} Carter contends that the victim was not credible because she

continued to call and visit him even after the alleged abuse began. The victim testified that she was scared and upset and wanted to punch Michael Carter in his face after the initial incident occurred. However, the victim also testified to a tumultuous relationship with her mother and that she frequently turned to her Aunt Julia for a second home. Moreover, the victim stated that after the last incident of abuse in January 2009, she did not contact Michael Carter again.

{¶ 21} Additionally, Carter contends that the victim was not credible because her timeline of the sexual abuse was inconsistent. Although K.W. could not remember the exact dates, she could give an approximate date based on the circumstances, holidays, and events within her family. Lastly, Carter alleges that the victim's mother, N.R., was trying to set him up. N.R. denied this allegation.

{¶ 22} Although Carter argues that his version of events should have been relied upon by the trial court, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the State, that the State has proven the offenses beyond a reasonable doubt. Accordingly, we cannot find that the trier of fact lost its way and created such a manifest miscarriage of justice that the

convictions must be reversed and a new trial ordered.

**{¶ 23}** The sole assignment of error is overruled; the judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
KENNETH A. ROCCO, J., CONCUR