[Cite as *State v. Wareham*, 2013-Ohio-3191.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO. 3-12-11

    v.

LOVELL C. WAREHAM,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Trial Court No. 12-CR-0048

Judgment Affirmed

Date of Decision: July 22, 2013

APPEARANCES:

    *Shane M. Leuthold* for Appellant

    *Ryan M. Hoovler* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Lovell Wareham, appeals the judgment of the Court of Common Pleas of Crawford County convicting him of unlawful sexual conduct with a minor and sentencing him to a 14-month prison term. On appeal, Wareham asserts that his conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On March 12, 2012, the Crawford County Grand Jury indicted Wareham with one count of unlawful sexual contact with a minor in violation of R.C. 2907.04(A), a felony of the fourth degree. The indictment arose from an alleged sexual relationship between Wareham, who was 20 years old, and C.T., a 13-year old female. The relationship purportedly lasted between January 3, 2012 and February 21, 2012.

{¶3} This matter went to trial on August 2, 2012. At trial, Officer Thomas Walker of the Bucyrus Police Department was the first to testify. He indicated that on February 21, 2012, he was dispatched to the residence at 1118 Willard Street, where there were reports of an altercation. While Officer Walker was en route to the house, the dispatcher informed him that Wareham had been involved and was walking southbound away from the residence. As Officer Walker got closer to the residence, he spotted Wareham walking as the dispatcher had said and stopped his cruiser. According to Officer Walker, Wareham then voluntarily

agreed to get into the cruiser because it was raining and he needed a ride. After getting into the cruiser, Officer Walker drove Wareham back to the residence.

**{¶4}** Officer Walker testified that he talked to C.T.'s mother, Brandy Shaw, when he arrived on the scene:

> Ms. Shaw told me that, uhm, she had found that Mr. Wareham was 20-years old and her daughter admitted to having sex with Mr. Wareham. Uhm, she initially stated that the fight – or she was misled, that he had told her that his name was Caleb and he was 16-years of age.
> And that he had come to the house wanting to make contact with her and she refused to let allow [sic] him in the house. And at some point, uhm, [C.T.]'s brother showed up and a physical altercation ensued between the two of them. Trial Tr., p. 65.

Upon learning this, Officer Walker commenced his investigation by confronting Wareham with Shaw's allegations. Officer Walker described this initial confrontation as follows:

> Q: Okay. And did [Wareham] say anything to you at that time?
>
> A: At the time when he was getting out of the car, he said I shouldn't – pardon my expression for using profanity – he said, "I should have not fucked with that girl. I should have left her alone." Trial Tr., p. 65-66.

**{¶5}** After this initial confrontation, Wareham was taken to an interrogation room, where Officer Walker performed a pat-down search of him. Officer Walker testified that he found five condoms on Wareham's person. Once the search was over, Officer Walker stated that "Mr. Wareham had made the comment that, 'He

-3-

always practiced safer sex with [C.T.]. He always used a condom.'"[1] Trial Tr., p. 66. Subsequently, Officer Walker testified that he Mirandized Wareham, who said that he did not want to make any further statements without an attorney present.

{¶6} On cross-examination, Officer Walker discussed C.T.'s statements to Wareham's family regarding her age:

> Q: All right. Now, did it not come out in the investigation that [C.T.] was telling [Wareham]'s family she was 17?
>
> A: She never said that. During my videotape interview with her she said that she emphatically told him that she was 13-years old and that he was fully aware of it. Trial Tr., p. 70.

Officer Walker acknowledged that there was no recording of Wareham's statements described above. He also admitted that he did not attempt to find physical evidence of a sexual relationship between Wareham and C.T.

{¶7} Officer Walker indicated that during his interview of C.T., she recalled losing her virginity to Wareham on January 3, 2012. But, Officer Walker also indicated that C.T. could not recall the exact location of this first sexual encounter. The following exchange occurred regarding this apparent dichotomy:

> Q: Does that seem odd to you?
>
> A: No, sir.
>
> Q: Would a woman know exactly the day and time of this but not know where?

---

[1] On July 17, 2012, Wareham moved to suppress his pre-*Miranda* statements. The trial court denied the motion on July 31, 2012 and he has not challenged the validity of this decision on appeal.

Case No. 3-12-11

A:  To be quite honest with you, I didn't ask her where she lost her virginity. * * * She indicated that they had sex * * * between * * * January 3rd and February 21st. And, uhm, she said it was between the two houses [C.T.'s house and Wareham's house] and miscellaneous other places. Trial Tr., p. 77-78.

{¶8} C.T. then testified. She said that she was 13 years old between January 3, 2012 and February 21, 2012 and that during that time frame, she had sex with Wareham. C.T. also indicated that both she and Shaw told Wareham how old she was. C.T. further testified that all of her sexual encounters with Wareham occurred in either his room at his house or in her room at her house. She said that when Wareham introduced her to his family, he said that she was 17 years old, and that when she introduced Wareham to Shaw, they said that he was 16 years old.

{¶9} On cross-examination, C.T. denied that she told police that she could not recall the location where she and Wareham first had sexual relations. She also acknowledged that the police could have recovered used condoms had they sought them. Finally, C.T. admitted that she looks older than she is.

{¶10} Shaw was the next witness to take the stand. She testified that she "specifically said [to Wareham that] my daughter is 13-years old, don't have any ideas." Trial Tr., p. 103. When Wareham was introduced to her, C.T. said his name was "Caleb" and both C.T. and Wareham said he was 16 years old. Shaw testified that in early February she learned Wareham was actually 20 years old,

which led her to again remind him that C.T. was 13 years old and that they could not be in a romantic relationship. Shaw further testified that during the altercation on February 21, 2012, Wareham said to her "[y]ou better be glad it's me with my dick inside [C.T.] than [S.W., another boy alleged to have romantic ties to C.T.]." Trial Tr., p. 107. On cross-examination, Shaw said that while she believed C.T.'s allegations, she never noticed C.T. and Wareham having sex in the house.

{¶11} After Shaw's testimony, the State rested. Wareham's case-in-chief relied on the testimony of his half-sister, Rikki Eggleston ("Rikki") and his ex-stepfather, Fred Eggleston ("Fred"), as well as his own. At the time of the alleged sexual relations, Wareham lived in Fred's house with Rikki. Rikki testified as follows regarding the likelihood that Wareham had sex in the house with C.T.:

> Q: Now, [C.T.] is saying that her [sic] and [Wareham] were going at it at your house. I think you know what I mean.
>
> A: Yes. And no, they was [sic] not because they had to keep the door open. When [C.T.] was at my house, the door to [Wareham]'s room was open 24/7. I was – I used to go in there and just bug [Wareham] just to make him mad. He's my brother.
>
> Q: Well, in other words, the question, the real question is, are you aware of any time when they could've done this when you and Fred were not around?
>
> A: No, because [Wareham] did not have a house key. And when [Wareham] was at the house with [C.T.] or any other woman, the house – the doors were always open. My dad always told him he was not having sex in the house. Trial Tr., p. 128.

{¶12} Fred likewise testified to the open-door policy in his house. Based on this policy, Fred said that it was "impossib[le]" for Wareham and C.T. to have sex in his house." Trial Tr., p. 133. He said that from January 2012 to February 2012, Wareham did not have a house key because "sometimes [Wareham] isn't the trusting [sic] person." Trial Tr., p. 136. On cross-examination, however, Fred indicated that at some point, he did give Wareham a house key and that that could have occurred in December 2011, January 2012, or February 2012.

{¶13} During his testimony, Wareham denied having sex with C.T. and he said that there was never a time where he could because whenever the two were together, other people were in their houses. Wareham also denied confessing to Officer Walker and he testified that he had condoms on his person because he had plans to find a woman at a local bar later that evening.

{¶14} Wareham stated that he believed C.T. was 17 years old. According to Wareham, he did not learn of C.T.'s actual age until February 21, 2012, when another friend told him about her age. After learning this, he said that he decided to end their relationship.

{¶15} On cross-examination, the following exchange occurred regarding the February 21, 2012 incident:

> Q: So the reason you went over [to C.T.'s house] was to tell [C.T.] that you lied to me, you're only 13 yet that never got out of your mouth?

A:   No, it never got out of my mouth.  I never got a chance, like I said.  Trial Tr., p. 151.

Wareham also admitted that he has a previous conviction for theft.  Further, he admitted to misleading Shaw about his age because he was worried that she would not let him see C.T.

{¶16} The jury returned a guilty verdict on August 2, 2012.  The trial court subsequently sentenced Wareham to 14 months in prison on October 17, 2012.

{¶17} Wareham filed this timely appeal, presenting the following assignment of error for our review.

### *Assignment of Error*

**THE JURY'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶18} In his sole assignment of error, Wareham argues that his conviction was against the manifest weight of the evidence.  After our review of the record, we disagree.

### *Manifest Weight of the Evidence Standard*

{¶19} When an appellate court analyzes a conviction under the manifest weight standard, it "sits as the thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 83 (1997).  Accordingly, it must review the entire record, weigh all of the evidence and its reasonable inferences, consider the

credibility of the witnesses, and determine whether the fact finder "clearly lost its way" in resolving evidentiary conflicts and "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1989). When applying the manifest weight standard, a reviewing court should only reverse a trial court's judgment "in exceptional case[s]" when the evidence "weighs heavily against the conviction." *Id*. at paragraph three of the syllabus.

*R.C. 2907.04(A)*

{¶20} Wareham was charged with violating R.C. 2907.04(A). This statute provides as follows:

> No person who is eighteen  years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows that the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard. R.C. 2907.04(A).

For the purposes of this statute, sexual conduct is relevantly defined as "vaginal intercourse between a male and a female." R.C. 2907.01(A). R.C. 2907.04(A) only provides for criminal liability when the offender knows that the victim was between 13 and 16 years of age or is reckless as to the victim's age. Under R.C. 2901.22(B), a person is deemed to have "knowledge of circumstances when he is aware that such circumstances probably exist." As to recklessness, the Revised Code provides that "[a] person is reckless with respect to circumstances, when,

with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

*Pertinent Evidence Offered at Trial*

{¶21} C.T. testified that she and Wareham had vaginal intercourse between January 3, 2012 and February 21, 2012. Further, she said that at that time she was 13 years old and Wareham was 20 years old. C.T.'s allegations were corroborated in both Officer Walker's and Shaw's testimonies. Officer Walker testified that C.T. made the same allegations in her police statement and that Wareham admitted to using condoms when he had sexual relations with C.T. Meanwhile, Shaw testified that during the incident on February 21, 2012, Wareham told her, "'You better be glad it's me with my dick inside [C.T.] than [S.W.].'" Trial Tr., p. 107.

{¶22} Additionally, there was significant evidence offered to show that Wareham knew C.T. was 13 years old at the time that they were engaging in sexual relations. C.T. herself testified that Wareham knew about her age, while Shaw testified that she affirmatively told him about C.T.'s age on two occasions. Further, Wareham admitted that he lied to Shaw about his age and name so that she would not stop him from dating C.T.

*Wareham's Arguments*

{¶23} Wareham's assignment of error essentially presents four arguments: (1) Officer Walker's testimony was incredible; (2) C.T.'s testimony was

incredible; (3) Officer Walker's and C.T.'s testimonies contradict his own; and (4) the State offered no physical evidence that Wareham had sexual intercourse with C.T. We do not find that any of these arguments support a finding that Wareham's conviction was against the manifest weight of the evidence.

{¶24} In regard to Wareham's arguments about the credibility of Officer Walker and C.T., we note that when assessing the manifest weight of the evidence, "[i]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Clark*, 101 Ohio App.3d 389, 409 (8th Dist. 1995). Further, the mere existence of inconsistencies in the testimony of different witnesses does not mandate that an appellate court reverse a conviction on manifest weight grounds. *See State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 11 (10th Dist.) ("The jury may take note of any inconsistencies and resolve them accordingly, believing all, part, or none of a witness's testimony."); *State v. Westerfield*, 10th Dist. No. 07AP-1072, 2008-Ohio-4458, ¶ 38 (rejecting manifest weight argument even though inconsistencies existed among the witnesses' testimonies). Although there are some inconsistencies in the testimony offered by Officer Walker and C.T., they are not so overwhelming as to preclude rational jurors from finding that their testimonies included credible information.

{¶25} Additionally, as to Wareham's argument about the conflict between his testimony and that of other witnesses, we note that jurors are entitled to believe

the testimony offered by the State's witnesses. *See State v. Bates*, 12th Dist. No. CA2009-06-174, 2010-Ohio-1723, ¶ 11 ("It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."). As such, the jurors were entitled to believe C.T.'s version of events over Wareham's. The jury was also at liberty to consider Fred's testimony that Wareham was not a trustworthy person and Wareham's admission that he was previously convicted for a theft offense.

{¶26} As to Wareham's arguments regarding the lack of physical evidence, we note that there is no requirement for such evidence to prove an unlawful sexual contact with a minor charge. *See State v. Sauto*, 9th Dist. No. 26404, 2013-Ohio-1320, ¶ 45-47 (rejecting manifest weight of the evidence challenge of unlawful sexual contact with a minor conviction that was partially predicated on lack of physical evidence); *State v. Jones*, 12th Dist. No. CA2012-03-049, 2013-Ohio-150, ¶ 16-22 (same); *State v. Carter*, 8th Dist. No. 94967, 2011-Ohio-2658, ¶ 19 (same); *see also State v. J.E.C., Jr.*, 10th Dist. No. 12AP-584, 2013-Ohio-1909, ¶ 40 (rejecting manifest weight challenge of sex offense conviction because "[t]here is no requirement that a defendant's conviction for a sex offense be based on physical evidence"). Since C.T. testified that she and Wareham had vaginal intercourse and there is corroborating evidence in the record, "we fail to find the

lack of physical evidence is a significant factor in weighing the evidence." *State v. West*, 10th Dist. No. 06AP-11, 2006-Ohio-6259, ¶ 18. Consequently, we find that the failure of the State to offer physical evidence does not render Wareham's conviction against the manifest weight of the evidence.

{¶27} In sum, the State offered significant evidence to show each element required for a conviction under R.C. 2907.04(A). Further, Wareham's arguments fail to establish that his conviction was against the manifest weight of the evidence. As such, we find no error in Wareham's conviction.

{¶28} Accordingly, we overrule Wareham's sole assignment of error.

{¶29} Having found no error prejudicial to Wareham in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**