[Cite as *State v. Michalek*, 2011-Ohio-1628.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                           |
|--------------------------|---|---------------------------|
|                          | : | JUDGES:                   |
| STATE OF OHIO            | : | William B. Hoffman, P.J.   |
|                          | : | John W. Wise, J.           |
| Plaintiff-Appellee       | : | Julie A. Edwards, J.       |
|                          | : |                           |
| -vs-                     | : | Case No. 2010CA00186       |
|                          | : |                           |
|                          | : |                           |
| JOHN A. MICHALEK         | : | O P I N I O N             |
|                          |   |                           |
| Defendant-Appellant      |   |                           |

CHARACTER OF PROCEEDING: Criminal Appeal from Stark County
Court of Common Pleas Case No.
2010CR0380

JUDGMENT: Affirmed In Part and Reversed and
Remanded In Part

DATE OF JUDGMENT ENTRY: March 28, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       KELLY S. MURRAY
Prosecuting Attorney                  116 Cleveland Avenue, N.W.
Stark County, Ohio                    Suite 303
                                      Canton, Ohio   44702
BY: RENEE M. WATSON
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio  44702-1413

*Edwards, J.*

{¶1} Appellant, John A. Michalek, appeals a judgment of the Stark County Common Pleas Court convicting him of aggravated arson (R.C. 2909.02(A)(1)) and retaliation (R.C. 2921.05(B)). Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2} In August of 2009, Jessica and Robin Strader moved into a six-unit apartment building in the City of Alliance which was managed by I Can, an agency assisting persons with disabilities. Appellant and his wife lived in the apartment directly across the hall from the Straders.

{¶3} Initially the two couples got along well. However, around Christmas of 2009, Jessica began having problems with her pregnancy. One night when Jessica was not feeling well and appellant was playing his music excessively loud, Robin went across the hall and asked appellant to turn his music down. Appellant became hostile and told Robin to leave.

{¶4} The relationship between the couples deteriorated. Appellant continued to play loud music and refused to cooperate with the Straders' requests to keep the volume down. The Straders relied on the Alliance Police Department to handle the problem, and Jessica reported each incident to I Can. Jessica also requested an appointment with I Can for mediation.

{¶5} Prior to March 2010, the Straders called for police assistance on at least four occasions. On March 15, 2010, the loud music began around 10:00 p.m., after the Straders had gone to bed. Jessica called the police and asked about the noise ordinance. Police told her that "anything after 10" was a violation. Robin went outside

and determined that appellant's music could be clearly heard outside the building. Robin did not attempt to talk to appellant because he knew appellant was intoxicated and feared the encounter would be more difficult than usual. The Straders called the police to report the latest incident of loud music.

{¶6} Police arrived and talked to appellant. Although appellant was belligerent and slammed the door in their faces, he did turn the music down and officers left the scene. However, when the police had left the building, appellant came out of his apartment yelling profanity at the Straders. He advised them that he was tired of them calling the police and they better sleep tight because it was all going to be over in the morning. Jessica called the police to report the threat.

{¶7} In response to Jessica's call, four officers arrived. Appellant refused to answer their knock at his door. Two officers left the scene, but two stayed behind in the Straders' apartment to see if appellant would repeat his earlier behavior. When things remained calm, the officers left the scene. However, as soon as the police left, appellant repeated his tirade.

{¶8} Sometime later, Jessica looked out the peephole in the door leading to the hallway. She saw what appeared to be a lit white candle sitting on the top step leading into the hallway. She initially thought this was a peace offering of some sort from appellant and ignored the candle. However, Jessica then began to smell smoke. Looking out the peephole again, she saw smoke and appellant spraying her door with lighter fluid. The Straders saw smoke and then fire. They called 911 and left the building via the fire escape, making sure the people occupying two other apartments also left the building.

{¶9} Alliance police officer Kevin Brown responded to the scene. The main door to the apartment building was open and he could see knee-high flames in front of the Strader's apartment door. When he entered the building he smelled kerosene or lighter fluid.

{¶10} The building was full of smoke and fire alarms were blaring. Officers went to all six apartments directing people to evacuate the building; however, appellant and his wife would not come to the door. Officers kicked their door in and found appellant and his wife lying in bed but not asleep. They got up and exited the building at the officer's direction. Shortly thereafter, appellant was arrested.

{¶11} A later search of appellant's apartment revealed a can of lighter fluid under the sofa. Elsewhere in the apartment, police found a lighter. Eugene Devies of the Alliance Fire Department investigated the fire. He noted fire damage to the hallway, extending approximately one and a half feet into the hallway from the Straders' door. Devies took samples of the carpet and ruled out an electrical cause. He concluded that the fire was consistent with having been set using an accelerant and that the fire started in the hallway.

{¶12} Appellant was indicted by the Stark County Grand Jury with one count of aggravated arson and one count of retaliation. The case proceeded to jury trial. Appellant was convicted as charged and sentenced to six years incarceration for aggravated arson and one year incarceration for retaliation, to be served concurrently. Appellant assigns four errors on appeal:

{¶13} "I. THE APPELLANT WAS DENIED HIS RIGHT TO TRIAL BY AN IMPARTIAL JURY.

{¶14} "II. THE TRIAL COURT ERRED BY PERMITTING A NON-EXPERT WITNESS TO GIVE AN OPINION OUTSIDE THE SCOPE OF EVID. R. 701.

{¶15} "III. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶16} "IV. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶17} In his first assignment of error, appellant argues he was denied a fair trial when the court did not inquire as to whether Juror 121 had shared his contact with a friend of appellant's with other jurors, did not instruct Juror 121 to refrain from sharing the contact with other jurors and did not excuse Juror 121.

{¶18} As the jury filed into the courtroom after receiving preliminary instructions, a friend of appellant's was standing outside the courtroom. As the alternate juror, Juror 121, entered the courtroom he heard the man say, "Help a brother out, man." Juror 121 reported the incident to the bailiff. The court questioned Juror 121 individually. The juror stated that the comment would in no way impact his ability to be fair and impartial. The juror stated that he didn't know if the remark was directed to him or the jury. When asked if anyone else heard the comment, he suggested that possibly the woman in front of him might have heard the comment.

{¶19} The court then spoke to the entire jury and explained that the alternate heard a comment as he was coming into the courtroom. The court asked if anyone else, specifically the woman in front of Juror 121, heard anything. Juror 107

represented that she was in front of the alternate and did not hear anything. The court instructed the jury that if they hear any comments they should disregard them and if anyone should attempt to contact one of them, report it to the bailiff immediately.

{¶20} Appellant did not ask the court to question Juror 121 further, to instruct the juror to refrain from sharing the comment with other jurors or to excuse the alternate juror. Appellant has therefore waived all but plain error under Crim. R. 52(B). To demonstrate plain error, appellant must show that but for the error, the result of the proceeding would clearly have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, ¶2 of the syllabus. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at paragraph 3 of the syllabus.

{¶21} Appellant relies on *Remmer v. United States*(1954), 347 U.S. 227, 229, in which the United States Supreme Court held:

{¶22} "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant."

{¶23} In *Remmer*, after the jury had returned its verdict the petitioner learned that an unnamed person had communicated with the jury foreman during trial and remarked that he could profit by returning a verdict favorable to the petitioner. The juror

reported the incident to the judge, who informed the prosecuting attorneys. As a result, the Federal Bureau of Investigation was requested to make an investigation and report. The F.B.I. report was considered by the judge and prosecutors alone. They concluded that the statement to the juror was made in jest, and nothing further was done or said about the matter. Neither the judge nor the prosecutors informed the petitioner of the incident, and he and his counsel first learned of the matter by reading of it in the newspapers after the verdict. Id. at 228.

{¶24} In the instant case, the comment was made to the jury in the hallway in such a manner that the only juror who heard it was not sure who it was directed to. The comment did not communicate anything toward the jury regarding the facts of the case, and certainly did not arise to the level of suggesting a profit could be made from a favorable verdict as in *Remmer*, supra. The state presented overwhelming evidence that appellant set the fire in the apartment building. After becoming angry when the Straders called the police to report his loud music, he advised them to sleep tight because it's all going to be over in the morning. Shortly thereafter, Jessica Strader saw a white candle in the hallway and appellant spraying her door with lighter fluid. A fire then broke out, the origin of which was later determined to be an accelerant used in the hallway outside the Straders' door. In spite of heavy smoke in the building, blaring fire alarms and police yelling for residents to evacuate the building, appellant refused to come to the door of his apartment and only left his apartment after police broke the door down.

{¶25} Based on the isolated nature of the comment to the alternate juror and the overwhelming evidence of guilt, appellant has not demonstrated plain error in the court's

failure to further question the juror concerning the comment, failure to instruct him to not share the comment with the other jurors or failure to excuse the juror.

{¶26} The first assignment of error is overruled.

II

{¶27} In his second assignment of error, appellant argues that the court erred in allowing Eugene Devies, the fire inspector, to testify that fire accelerant was used to start the fire without qualifying him as an expert witness.

{¶28} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph 2 of the syllabus. An abuse of discretion implies that the court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶29} Evid. R. 702 governs the admission of expert testimony:

{¶30} "A witness may testify as an expert if all of the following apply:

{¶31} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶32} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶33} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

{¶34} It is unclear from the record whether the court considered Devies testimony to be expert testimony or lay testimony. Appellant's objection to the

testimony is general and made at the point at which Devies offers his opinion that the fire was started using an accelerant. Although the State does not specifically ask the court to qualify Devies as an expert, it is not clear that appellant is objecting on the basis that Devies is not qualified to testify as an expert. Thus, it is not clear from the record whether the court allowed him to testify as an expert or a lay witness. The state argues that Devies could testify under Evid. R. 701 because his testimony concerning the start of the fire is within the common knowledge of a lay person. We disagree. While it is preferable for the trial court to explicitly find that a witness qualifies as an expert, where the testimony of a witness relates to knowledge beyond the scope of a lay person, we can infer from the record that the trial court found the witness to be an expert, and the question thus becomes whether the witness was properly qualified as an expert. *State v. Rangel* (2000), 140 Ohio App.3d 291, 295, 747 N.E.2d 291, 296.

{¶35} In the instant case, Devies testified that he had worked for the Alliance City Fire Department for 21 years and before that worked for the Marlboro Fire Department for four years. From 1998 through 2005 he worked in fire prevention. He became a fire inspector in 1984, when he was doing volunteer firefighting. In 1998, he began working full-time as a fire inspector for the Alliance Fire Department. He attended a fire investigation class at the National Fire Academy in Maryland, after which he received a certification. He participated in yearly continuing education, attending training classes through the County Fire Investigation Unit. Over 25 years he had investigated many fires. He investigated the fire in the instant case. It was not error for the trial court to consider Devies to be an expert regarding fire causation based on his specialized knowledge, skill, experience, training and education on the subject matter.

**{¶36}** Further, even if the evidence were inadmissible because Devies was not properly qualified as an expert witness, we find any error to be harmless.

**{¶37}** Crim. R. 52(A) defines harmless error:

**{¶38}** "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

**{¶39}** The test for determining whether the erroneous admission of evidence is harmless requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. *State v. Riffle,* Muskingum App. No. 2007-0013, 2007-Ohio-5299 at ¶ 36-37 (Citing *State v. Davis* (1975), 44 Ohio App.2d 335, 347, 338 N.E.2d 793). Error is harmless beyond a reasonable doubt when the remaining evidence constitutes overwhelming proof of the defendant's guilt. *State v. Williams* (1988), 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910.

**{¶40}** In the instant case, there was evidence that Jessica saw appellant through the peephole of her door with what appeared to be a lit candle. She later saw him spraying her door with lighter fluid. The apartment went up in flames. Appellant had earlier threatened the Straders and hid from law enforcement even as the building in which he was hiding was going up in flames. There was substantial evidence to support the guilty verdict even if the testimony of Devies, as to whether fire accelerant was used to start the fire, had been excluded.

**{¶41}** The second assignment of error is overruled.

III

{¶42} Appellant argues counsel was ineffective for failing to call a witness to authenticate a lab report which concluded there was no accelerant on appellant's hands. Appellant also argues counsel was ineffective for failing to question Juror 121 as to whether he shared with the other jurors what the man in the hallway said to him, for failing to request that he not share the comment with other jurors and for failing to request that Juror 121 be excused.

{¶43} A properly licensed attorney is presumed competent. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

{¶44} Appellant first argues counsel was ineffective for failing to call a witness to authenticate a lab report which showed no traces of accelerant on appellant's hands. Although the results of this report were exculpatory in nature, appellant has not demonstrated that the result of the proceeding would have been different had it been presented. Appellant warned the Straders that it would all be over in the morning. Jessica Strader testified that she saw appellant spraying lighter fluid on her door and saw a lit white candle in the hallway. Lighter fluid was found under appellant's sofa.

Appellant has not demonstrated that the results of the trial would have been different had evidence been presented that he later showed no signs of accelerant on his hands.

**{¶45}** Appellant also argues counsel was ineffective regarding the handling of Juror 121. As discussed in Assignment of Error One above, appellant has not demonstrated that the result of the proceeding would have been different had the juror been questioned further, instructed differently or excused.

**{¶46}** The third assignment of error is overruled.

IV

**{¶47}** Appellant argues that the judgment is against the manifest weight and sufficiency of the evidence.

**{¶48}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶49}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶50}** Aggravated arson is defined by R.C. 2909.02(A)(1):

**{¶51}** "(A) No person, by means of fire or explosion, shall knowingly do any of the following:

**{¶52}** "(1) Create a substantial risk of serious physical harm to any person other than the offender;"

**{¶53}** Appellant does not argue that the evidence was insufficient to support any element of the crime. Rather, appellant argues that Jessica's testimony concerning the white candle and the size and color of the lighter fluid container was not credible. He also argues the results of testing on his hands and on the carpet outside the doorway was not submitted to the jury.

**{¶54}** The jury was able to observe Jessica and weigh her credibility. She testified that through the peephole, she first saw what appeared to be a lit white candle, and later saw appellant spraying her door with what appeared to be lighter fluid. The apartment later went up in flames with the origin of the fire directly outside the Straders' door. Appellant had earlier threatened the Straders and hid from law enforcement even as the building in which he was hiding went up in flames. The jury did not lose its way in finding appellant guilty of aggravated arson.

**{¶55}** Appellant also argues the evidence was insufficient to convict him of retaliation:

**{¶56}** "(B) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges." R.C. 2921.05(B).

**{¶57}** This Court has previously held that in order to sustain a conviction for retaliation, there must be proof that the attack was precipitated by a specific civil or criminal case involving the victim. *State v. Esway* (September 27, 1999), Stark App. No. 1999CA00109, unreported. The State concedes that because there was not a specific civil or criminal case involving the Straders that precipitated the attack, the conviction for retaliation is not supported by sufficient evidence and should be reversed.

**{¶58}** The fourth assignment of error is sustained in part and overruled in part.

**{¶59}** The judgment of the Stark County Common Pleas Court is reversed as to the conviction for retaliation. The conviction for aggravated arson is affirmed. This cause is remanded to that court for further proceedings according to law, consistent with this opinion.

By: Edwards, J.

Hoffman, P.J. and

Wise, J. concur

_____

_____

_____

                        JUDGES

JAE/r0124

[Cite as *State v. Michalek*, 2011-Ohio-1628.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN A. MICHALEK | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2010CA00186 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part to the trial court for further proceedings.  Costs assessed 50% to appellee and 50% to appellant.

_____

_____

_____

JUDGES