[Cite as *State v. Rozikov*, 2020-Ohio-4884.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO.  16-19-07

     v.

NORMUROD ROZIKOV,                O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Upper Sandusky Municipal Court
Trial Court No. CRB 1700499 A

Judgment Affirmed

Date of Decision:   October 13, 2020

APPEARANCES:

     *W. Joseph Edwards* for Appellant

     *Richard A. Grafmiller* for Appellee

Case No. 16-19-07

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Normurod Rozikov ("Rozikov"), appeals the judgment entry of sentence of the Upper Sandusky Municipal Court's jury verdict finding Rozikov guilty of vehicular homicide. For the reasons that follow, we affirm.

{¶2} The facts relevant to this appeal are as follows. On July 1, 2017, Rozikov was making a U-turn of his semi-truck and trailer off of U.S. Route 23 north onto U.S. Route 23 south, a four-lane-divided highway. A 2010 Ford Edge ("SUV") driven by Darlene Kujawa ("Kujawa"), was also traveling northbound on U.S. Route 23 at that time. During Rozikov's U-turn onto U.S. Route 23 south, Kujawa's vehicle struck the left rear side of Rozikov's trailer resulting in a crash and her death.

{¶3} As a result of the crash, Rozikov was charged with vehicular homicide in violation of R.C. 2903.06(A)(3), a first-degree misdemeanor.[1]  (Doc. No. 1). Rozikov plead not guilty, and his case was set for a jury trial. (Doc. No. 3, 7, 25).

{¶4} On March 12, 2018, Rozikov filed a motion in limine in the trial court regarding Trooper John R. Banta's ("Sgt. Banta") qualifications as an expert witness

---

[1] In other cases, Rozikov was charged with vehicular manslaughter in violation of R.C. 2903.06(A)(4), a second-degree misdemeanor, and ultimately found not guilty by the jury. (Aug. 22, 2019 Tr., Vol. II, at 466). Rozikov was also cited under R.C. 4511.39 (Turn and stop signals) for maneuvering without regard to everyone else's safety, a minor misdemeanor, and subsequently found guilty by the trial court. (Doc. Nos. 35, 36); (Aug. 21, 2019 Tr., Vol. I, at 156, 175); (Aug. 22, 2019 Tr., Vol. II, at 466, 468).

and as to the reliability of Sgt. Banta's accident-reconstruction report under Evid.R. 702.  (Doc. No. 20).  The trial court denied Rozikov's motion prior to trial.  (Doc. No. 29).

{¶5} On August 21, 2019, a jury trial commenced in the trial court.  On August 22, 2019, the jury found Rozikov guilty of vehicular homicide.  (Doc. Nos. 35, 36); (Aug. 22, 2019 Tr., Vol. II, at 466, 468).  After the verdict, the trial court ordered the preparation of a presentence investigation report and scheduled a sentencing hearing.  (Doc. Nos. 38, 39, 40, 41, 42).

{¶6} On October 22, 2019, Rozikov was sentenced to two years of community control sanctions which included a 30-day-jail sentence; a $750.00 fine; court costs including the cost of the jury trial and interpreter fees; and a one-year-class-four-license suspension commencing October 25, 2019.[2]

{¶7} On November 20, 2019, Rozikov filed his notice to appeal.[3]  (Doc. No. 47).  Rozikov raises two assignments of error which we will address separately.

**Assignment of Error No. I**

**The Trial Court Abused Its Discretion By Allowing Improper Expert Testimony Regarding The Ultimate Issue Of Negligence Thereby Violating The Ohio Rules Of Evidence While Also Depriving The Defendant Of His Right To A Fair Trial Under The Ohio And Federal Constitutions (Record Reference:  Vol. II, PP. 279, 298-300) [sic]**

---

[2] Rozikov was advised that his conviction resulted in a six-point violation, and the trial court further ordered the imposition of his jail term stayed pending this appeal.  (Doc. No. 44).
[3] Rozikov did not appeal his minor-misdemeanor conviction under R.C. 4511.39.

{¶8} In his first assignment of error, Rozikov argues that the trial court abused its discretion by admitting the expert testimony of Sgt. Banta. First, Rozikov argues that Sgt. Banta did not have the requisite specialized knowledge, skill, experience, training, or education to testify as to the area-of-impact of the crash (leading to the ultimate issue of negligence). Second, he argues that Sgt. Banta's testimony is not based on reliable scientific, technical, or other specialized information under Evid.R. 702(C), and thus, is inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993).

*Standard of Review*

{¶9} The admissibility of an expert's testimony is a matter committed to the sound discretion of the trial court, and the trial court's ruling will not be reversed absent an abuse of that discretion. *State v. Hawkey*, 3d Dist. Defiance No. 4-14-03, 2016-Ohio-1292, ¶ 76, citing *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 9. A trial court has abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 2d Dist. Montgomery No. 23037, 2010-Ohio-278, ¶ 16-18. *State v. Waldock*, 3d Dist. Seneca No. 13-14-22, 2015-Ohio-1079, ¶ 62, citing *Boles* at ¶ 16-18. An appellate court may not substitute its judgment for that of the trial court when

Case No. 16-19-07

applying the abuse-of-discretion standard. *Waldock* at ¶62, citing *State v. Slappey*, 3d Dist. Marion No. 9-12-58, 2013-Ohio-1939, ¶ 12.

*Analysis*

{¶10} In deciding whether Sgt. Banta's testimony was admissible, we begin our analysis with a review of Evid.R. 702, which governs admissibility of expert testimony. Evid.R. 702 provides:

> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
>
> (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
>
> (2) The design of the procedure, test, or experiment reliably implements the theory;
>
> (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Evid.R. 702. Rozikov referred to this evidence rule in his motion in limine which the trial court ultimately denied. (Doc. Nos. 20, 29).

{**¶11**} The nature of a trial court's ruling on a motion in limine is "tentative, interlocutory, precautionary" based on anticipated evidentiary issues at trial. *State v. Miller*, 3d. Dist. Allen No. 1-18-17, 2018-Ohio-4648, ¶ 8, citing *State v. French*, 72 Ohio St.3d 446, 450 (1995). In order to preserve a claimed error for review, there must be """"a contemporaneous objection at trial."""" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 53, quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 59, quoting *State v. Hill*, 75 Ohio St.3d 195, 203 (1996). Importantly, at trial Rozikov's trial counsel failed to renew his motion in limine, failed to object as to whether Sgt. Banta was qualified to testify as an expert witness, and failed to object to Sgt. Banta's expert-opinion testimony. (Aug. 22, 2019 Tr. Vol. II, 277-471). Due to these failures, we will apply the plain-error-standard-of review in this assignment of error.

{**¶12**} "Crim.R. 52(B) governs plain-error review in criminal cases." *Bagley* at ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). Under Crim.R. 52(B) for there to be plain error, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Under the plain-error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*,

50 Ohio St.3d 58, 63 (1990). Plain error is recognized "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶13} Addressing whether Sgt. Banta was qualified as an expert witness by the trial court, our review of the record reveals that the State did not ask the trial court to formally recognize Sgt. Banta as an expert witness prior to eliciting his opinion testimony.

> 'While it is preferable for the trial court to *explicitly* find that a witness qualifies as an expert, where the testimony of a witness relates to knowledge beyond the scope of a lay person, we can *infer from the record* that the trial court found the witness to be an expert, and the question thus becomes whether the witness was properly qualified as an expert.'

(Emphasis added.) *LaBounty v. Big 3 Automotive*, 6th Dist. Ottawa No. OT-18-022, 2019-Ohio-1919, ¶ 59, quoting *State v. Michalek*, 5th Dist. Stark No. 2010CA00186, 2011-Ohio-1628, ¶ 34. "In order to qualify as an expert, an expert 'must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary juror.'" *Id.*, quoting *Scott v. Yates*, 71 Ohio St.3d 219, 221 (1994), citing *State Auto Mut. Ins. Co. v. Chrysler Corp.*, 36 Ohio St.2d 151, 160 (1973). *See* Evid.R. 702(A).

{¶14} Importantly, Rozikov never requested that Sgt. Banta be subjected to *voir dire* as to his qualifications, and did not request the trial court engage in a

*Daubert* analysis on the record prior to permitting him to testify as an expert witness. (Aug. 22, 2019 Tr., Vol. II, 277-471).

**{¶15}** Here, Sgt. Banta testified that he is the supervisor for the Ohio State Highway Patrol District Post in Bucyrus which covers nine counties and seven posts, including Wyandot County. (*Id.* at 280). He testified that he oversees vehicle-crash-reconstruction investigations as a certified-crash investigator. (*Id.*). Sgt. Banta detailed his experience in the investigations of fatal- and serious-injury crashes. (*Id.*) Further, he testified that he instructs cadets, trainees, and outside-law-enforcement agencies in crash-investigation courses. (*Id.*).

**{¶16}** In light of Sgt. Banta's specialized knowledge of the reconstruction of crash investigations for which he holds a certification and his investigative experience with fatality- and serious-injury crashes, we conclude that the trial court did not err by permitting Sgt. Banta to testify as an expert under Evid.R. 702(A) and (B). *See LaBounty* at ¶ 59. *See also* Evid.R. 702(A), (B).

**{¶17}** Next, we address the admissibility of Sgt. Banta's testimony as to the issue of the area-of-impact of the crash and impeding the right-of-way of another vehicle. To be admissible, we must determine such testimony to be both relevant and reliable.[4] *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611 (1998), citing

---

[4] Because Rozikov does not challenge the admissibility of the Sgt. Banta's expert testimony under Evid.R. 401, 402 and 403, we need only address whether it was reliable under Evid.R. 702. We do, however, note that Rozikov cites *State v. Benson*, 1st Dist. Hamilton No. C-180128, 2019-Ohio-3255, for the proposition that expert testimony as to the ultimate issue "violates the tenets of Ohio law regarding expert testimony".

*Daubert*, 509 U.S. at 579, 113 S.Ct. at 2786. "Evid.R. 702 'vest[s] the trial court with the role of gatekeeper' and part of '[t]his gatekeeping function imposes an obligation upon a trial court to assess * * * the reliability of an expert's methodology.'" *City of Brook Park v. Rodojev*, ___ Ohio St.3d ___, 2020-Ohio-3253, ¶ 24, (Kennedy, J. dissenting), quoting *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶ 24.

{¶18} In evaluating the scientific reliability of an expert, a trial court applies the factors set forth in *Daubert,* 509 U.S. 579, 113 S.Ct. 2786:

> The trial court should first assess whether the method or theory relied upon has been tested. [*Daubert*] at 593, 113 S.Ct. 2786, 125 L.Ed.2d 469. Next, it should consider whether the theory has been the subject of peer review, and then whether the method has a known or potential error rate. *Id.* at 593-594, 113 S.Ct. 2786, 125 L.Ed.2d 469. Finally, *Daubert* instructs trial courts to look at whether the theory has gained general acceptance in the scientific community. *Id.* at 594, 113 S.Ct. 2786, 125 L.Ed.2d 469. None of these factors, of course, is dispositive of the inquiry, and when gauging the reliability of a given expert's testimony, trial courts should focus "solely on principles and methodology, not on the conclusions" generated. *Id.* at 595, 113 S.Ct. 2786, 125 L.Ed.2d 469.

---

(Appellant's Brief at 10). Unlike *Benson*, Rozikov did not challenge whether Sgt. Banta's ultimate-issue testimony as to the area-of-impact or the impeding of the right-of-way was appropriate *and* would carry the risk of being unfairly prejudicial, confusing the issues, or misleading the jury under Evid.R. 403. *Id.* at ¶ 20, citing *Schaffer v. Ward*, 17 Ohio St.3d 79, 81 (1985). *Benson* notes that the First District Court of Appeal's decisions on ultimate-issue testimony have varied depending on a fact-intensive determination as to whether there were conflicting, independent eyewitnesses, or audio/visual evidence. *Id.*, (citations omitted.) Here, Rozikov is more likened to *Schaffer* where there were no independent eyewitnesses to the crash itself (a fact Rozikov concedes) as compared with *Benson* where the crash was recorded by surveillance cameras in the vicinity of the crash. *Id.*; (Appellant's Brief at 14), ("However, no person directly observed the accident and [Sgt. ]Banta's opinion is no more credible than [N.] Marsalek's testimony referenced above.")

*Id.*, quoting *Caputo* at ¶ 25, quoting *Daubert* 509 U.S. at 595, 113 S.Ct. 2786. The Supreme Court of the United States later clarified the *Daubert*-reliability standard by extending it to all experts and not just those offering scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-149, 119 S.Ct. 1167, 1174-1175 (1999). "The reliability inquiry is a flexible one, and the specific factors enumerated in *Daubert* do not all necessarily apply in every instance." *LaBounty*, 2019-Ohio-1919, at ¶ 59 citing *Kumho*, 526 U.S. at 150-151, 119 S.Ct. at 1173-1174. "Thus, scientific studies are not the exclusive means to establish reliability under *Daubert*. Rather, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id.* at ¶ 64, citing *Kumho*, 526 U.S. at 150, 119 S.Ct. at 1175.

{¶19} Here, the assumptions made by Sgt. Banta as to the area-of-impact and to the impeding of the right-of-way were based on facts supported by the record. Sgt. Banta testified that he was not on duty on July 1, 2017, but he was called to the crash scene by Ohio State Highway Patrol Trooper, Sergeant Sean E. Carpenter ("Sgt. Carpenter") due to the serious nature of the crash. (Aug. 22, 2019 Tr., Vol. II, at 281). Sgt. Banta testified that upon arrival at the crash scene he spoke with the first responders present.[5] (*Id.* at 282). According to Sgt. Banta, it was brought to his attention that Rozikov was operating a semi-truck and trailer and was

---

[5] The first law enforcement agency to respond to the crash scene was the Wyandot County Sheriff's Department with emergency medical squads followed by the Ohio State Highway Patrol. (Aug. 21 Tr., Vol. I, at 152, 190).

attempting to make a U-turn from U.S. Route 23 north onto U.S. Route 23 South when the accident occurred. (*Id.*).

{¶20} Sgt. Banta's on-the-scene investigation also included walking the scene taking pictures of the vehicles, roadway, evidence, and the area leading up to the crash. (*Id.* at 282-283). At trial, Sgt. Banta testified to his process for taking forensic measurements of the crash scene through the use of a Total Robotics Station ("TRS"). (*Id.* at 283). After obtaining the needed measurements through the use of the TRS, Sgt. Banta checked with the other law-enforcement officers at the crash scene to discover what was known about the crash at that time. (*Id.*). Sgt. Banta further testified that when he formulated his crash-reconstruction report, he considered the evidence he reviewed, including 215 photographs, witness statements, and the Ohio-State-Highway-Patrol-Traffic-Crash Report. (*Id.* at 284).

{¶21} After consideration of the gouge marks of Kujawa's vehicle, fluids discarded from the vehicles, scuff marks of Rozikov's vehicle, and crash debris, Sgt. Banta testified that the area-of-impact of the vehicles occurred in the right-hand-driving lane of U.S. Route 23 northbound. (*Id.* at 289-290).

{¶22} Sgt. Banta testified further that he was able to recover the front left headlight of Kujawa's SUV noting that the coils were evenly spaced and generally in a straight line indicating that Kujawa's SUV's lights were incandescent (i.e., illuminated) at the time of the crash. (*Id.* at 291-292).

{¶23} According to Sgt. Banta and in addition to the foregoing, Kujawa's SUV had two computer modules (i.e., Powertrain Control Module ("PCM") and Restraint Control Module ("RCM")) that provided precrash information as a result of an algorithm triggered by a sudden change in forward velocity resulting in the deployment of Kujawa's air bag. (*Id.* at 293-295). (State's Exs. 2, 7). Sgt. Banta testified that Kujawa's SUV's computer modules yielded data points of precrash information including vehicle speed, braking, revolutions per minutes ("RPMs"), and whether or not the automatic brake system ("ABS") was active leading up to the computer-modules' decisions regarding deployment of the airbag.[6] (*Id.* at 295). Sgt. Banta testified Kujawa's vehicle reported a speed of 67mph as to the first data point (after the computer-modules' decisions regarding deployment of the airbag) and 55mph as to the last data point (five seconds later). (*Id.* at 296).

{¶24} Notably, Rozikov offered no expert witness in opposition to Sgt. Banta's methodology or theories, no peer-reviewed publications dispelling Sgt. Banta's methodology or theories, and no witnesses to testify as to whether Sgt. Banta's methodology or theories had not gained general acceptance in the scientific community. *See* Evid.R. 702. *See also Daubert,* 509 U.S. at 579, 113 S.Ct. at 2786.

---

[6] Sgt. Banta testified that on the date he wrote the initial-crash-reconstruction report that he had taken the training course to obtain the precrash data from the modules, but not to interpret the data. (Aug. 22, 2019 Tr., Vol. II, at 313). However, after obtaining the additional training to interpret the data, Sgt. Banta issued a supplemental-crash-reconstruction report. (*Id.* at 313-314). Both reports were admitted into evidence in the trial court. (States Exs. 1, 2)

Moreover, Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Evid.R. 703. "[W]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *State v. Solomon*, 59 Ohio St.3d 124, 126 (1991), citing Evid.R. 703. Additionally, Evid.R. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶25} The record reveals that Sgt. Banta obtained information from his investigation and data from the computer modules of Kujawa's vehicle. (Aug. 22, 2019 Tr., Vol. II, at 293-300). It was from this information and data that Sgt. Banta formulated his opinions as to the area-of-impact of the crash and whether Rozikov was impeding Kujawa's SUV's right-of-way when the crash occurred. (*See id.* at 300). *See also* Evid.R. 703, 704, 705. Thus, his testimony as to the area-of-impact and as to impeding the right-of-way in a crash is permissible under Evid.R. 703 and 704. *See Schaffer v. Ward*, 17 Ohio St.3d 79, 81 (1985), citing Evid.R. 704. Moreover, based upon the evidence and data collected by Sgt. Banta from his crash investigation, his extensive professional-experience investigating fatality- and serious-injury crashes, and his certification as a crash investigator, we conclude that

Sgt. Banta's testimony was based upon reliable technical evidence under Evid.R. 702(C).

{¶26} Accordingly, by determining Sgt. Banta to be an expert witness, we cannot conclude that the trial court deviated from some legal rule, with an obvious defect in the proceeding, that affected Rozikov's substantial rights. Thus, we find that no plain error exists which has caused a manifest miscarriage of justice in the case *sub judice*.

{¶27} Accordingly, we overrule Rozikov's first assignment of error.

**Assignment of Error No. II**

**The Jury's Verdicts [sic] Were Against The Manifest Weight Of The Evidence (Judgment Entry, PP 1-4) [sic]**

{¶28} In his second assignment of error, Rozikov argues that the jury's verdict as to Rozikov's vehicular-homicide conviction is against the manifest weight of the evidence.[7] For the reasons that follow, we disagree.

*Standard of Review*

{¶29} An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports

---

[7] On appeal and in his second assignment of error as to manifest weight of the evidence, Rozikov intertwines sufficiency-of-the-evidence and manifest-weight arguments. (Appellant's Brief at 13-14). The "Assignment of Error" section of his brief and the standard of review in his argument both identify manifest weight of the evidence as his focus; however, he concludes his argument by stating that "the [S]tate failed to present sufficient evidence that the defendant was negligent in this case." The bulk of his argument; nevertheless, relates to the weight that the jury gave Sgt. Banta's testimony (an expert witness) which he asserts contradicted N. Marsalek's testimony (a witness present at the scene of the crash immediately following the impact) and photographs introduced into evidence. Taking into account that we are to determine appeals on

the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387.

*Analysis*

{¶30} In this case, Rozikov was convicted of vehicular homicide in violation of R.C. 2903.06, which provides in its pertinent parts

> (A) No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * in any of the following ways:
>
> * * *
>
> (3) In one of the following ways:
>
> (a) Negligently;
>
> * * *
>
> (C) Whoever violates division (A)(3) of this section is guilty of vehicular homicide. Except as otherwise provided in this division, vehicular homicide is a misdemeanor of the first degree. * * *.

---

the merits of the assignments of error set forth under App.R. 16, we will review his second assignment of error as a manifest-weight-of-the-evidence argument consistent with his assignment of error, identified standard of review, and issue he is asking this court to resolve.

> \* \* \*
>
> In addition to any other sanctions imposed pursuant to this division, the court shall impose upon the offender a class four suspension of the offender's driver's license, commercial driver's license, \* \* \* from the range specified in division (A)(4) of section 4510.02 of the Revised Code, \* \* \*.

R.C. 2903.06(A)(3)(a), (C).

{¶31} In order to prove that Rozikov committed the charged offenses, the State called six witnesses. The jury heard evidence from Nicholas D. Marsalek ("N. Marsalek"), an eye witness to the crash scene immediately following the impact. (Aug. 21, 2019 Tr., Vol. I, at 111). N. Marsalek testified that while preparing to pass Rozikov's semi-truck and trailer (because Rozikov was traveling slower than the posted-speed limited), he observed Rozikov make a left turn from the right lane of U.S. Route 23 north. (*Id.* at 112-114). According to N. Marsalek, after Rozikov turned left, he and his father, Daniel F. Marsalek ("D. Marsalek") observed that a crash had taken place.[8] (*Id.* at 114).

{¶32} Next the State presented the testimony of D. Marsalek, N. Marsalek's father. (*Id.* at 122). D. Marsalek testified that he was the front seat passenger in the vehicle that his son was driving. (*Id.*). He testified that Rozikov's semi-truck and trailer was "not going the speed limit" when the truck made an abrupt left turn from the right lane of U.S. Route 23 north without a turn signal. (*Id.* at 123-124). This

---

[8] N. Marsalek testified that he did not see the crash impact, just the aftermath. (Aug. 21, 2019 Tr., Vol I, at 117, 120).

turn by Rozikov was so abrupt that D. Marsalek testified that he was concerned there was something on the right side of the road that caused the semi-truck-and-trailer driver to turn. (*Id.* at 128). According to D. Marsalek, as they got closer, he could see that the semi-truck and trailer was stopped in the middle of the intersection, and there had been a crash. (*Id.* at 125). He then instructed his son to pull over, called 911, and attempted to render assistance. (*Id.*). On cross-examination, D. Marsalek testified that Rozikov's semi-tractor and trailer did not jackknife, it just made a quick turn. (*Id.* at 132).

{¶33} The State's next witness was James R. Patrick, M.D. ("Dr. Patrick"). Dr. Patrick testified that he is currently retired, but was the coroner and chief-forensic pathologist of Lucas County, Ohio in July 2017 and conducted the autopsy of Kujawa. (*Id.* at 143). Dr. Patrick testified that Kujawa's manner of death was accidental and that her cause of death was multiple-blunt-force trauma. (*Id.* at 144-145, 148). He testified that Kujawa sustained significant chest injuries including a partial-lung collapse; a fracture of her spine; and lacerations to her liver and spleen as well as a laceration of the kidney. (*Id.* at 145).

{¶34} On cross-examination, Dr. Patrick testified that even though it is possible for someone (like Kujawa in the instant case) who has coronary-artery disease to have bouts of dizziness or unconsciousness, an autopsy is not designed to

answer the question of whether Kujawa was suffering from this prior to the accident. (*Id.* at 146-147).

{¶35} The State's next witness was Ohio State Highway Patrol Trooper, Ashley Keller ("Tpr. Keller"). (*Id.* at 149-150). Tpr. Keller was dispatched to investigate an injury crash at the intersection of U.S. Route 23 and County Road 42, in Salem Township, Wyandot County, Ohio in July 2017. (*Id.* at 150-151). While on scene, she took photos and completed a field sketch. (*Id.* at 152). After conversing with another law-enforcement officer, Tpr. Keller issued the driver of the semi-tractor and trailer (Rozikov) a citation (at the crash scene) for a violation of R.C. 4511.39 (i.e., Turn and stop signals) for maneuvering without regard to everyone else's safety. (*Id.* at 152-154, 156). Tpr. Keller testified that after she explained why Rozikov was being cited for the crash "[h]e said that he had pulled off on the shoulder and then turned onto County Road 42 to make a wide left turn so he could go through the median to turn southbound" onto U.S. Route 23 south. (*Id.* at 155). Tpr. Keller went on to testify that Rozikov relayed to her he was off the traveled portion of the road (i.e. on the shoulder of County Road 42). (*Id.*).

{¶36} On cross-examination, Tpr. Keller testified that she had been a State Trooper since March 2017, and this was her first crash fatality involving a semi-truck and trailer. (*Id.* at 158). Importantly, Tpr. Keller testified that she believes

that the semi-truck and trailer was moved after the crash based on the markings on the road (i.e., two tire scuffs) from Rozikov's trailer. (*Id.* at 177-178).

{¶37} On redirect-examination, Tpr. Keller, testified that both the semi-truck and trailer and the SUV were primarily in the passing lane. (*Id.* at 181). Further, Tpr. Keller testified that Rozikov told her that "he drove off the shoulder slightly onto County Road 42 in order to make the turn." (*Id.* at 187).

{¶38} Next, the State called Sgt. Carpenter. (*Id.* at 189). Sgt. Carpenter testified that on July 1, 2017 he was the supervisor of Ohio State Highway Patrol Post in Bucyrus, Ohio for the afternoon shift. (*Id.* at 189, 194). According to Sgt. Carpenter, he was dispatched to a two-vehicle crash on U.S. Route 23 involving a commercial vehicle and another vehicle. (*Id.* at 190). Sgt. Carpenter arrived on the crash scene 21 minutes after being dispatched. (*Id.* at 190-191). Upon his arrival, Sgt. Carpenter observed Rozikov's semi-tractor and trailer positioned partially in the left-northbound lane of U.S. Route 23 and partially in the left-southbound lane of U.S. Route 23. (*Id.* at 192). Sgt. Carpenter testified that he spoke with Rozikov who told him that he had pulled off to the right shoulder of U.S. Route 23 to stop and after permitting several cars to pass by him northbound, he turned the tractor part of his semi-truck over onto County Road 42 (the road intersecting with U.S. Route 23). (*Id.* at 192-193, 196-197). Sgt. Carpenter further testified that Rozikov told him that he then made a U-turn across both right and left lanes of northbound

traffic in U.S. Route 23 traveling two-to-three mph. (*Id.* at 193, 197). Sgt. Carpenter testified that after the attempted U-turn, Rozikov stated that he felt an impact to his trailer. (*Id.* at 196, 196-197). Sgt. Carpenter testified that Rozikov did not use due care when operating his commercial vehicle, and that Rozikov should have gone up four exits where he could safely turn around to travel southbound onto U.S. Route 23. (*Id.* at 202).

{¶39} On cross-examination, Sgt. Carpenter testified he was the lead-crash investigator and not the reconstructionist. (*Id.* at 223). He testified that his investigation supports that the semi-truck and trailer was moving at the time of impact, and that Kujawa's SUV was traveling at the posted speed limit and that there were no skid marks from her vehicle. (*Id.* at 229-230). On redirect-examination, Sgt. Carpenter testified that Kujawa had the right-of-way. (*Id.* at 257-262).

{¶40} The State's last witness was Sgt. Banta. (Aug. 22, 2019 Tr., Vol. II, at 279). Because we discussed the majority of Sgt. Banta's testimony in Rozikov's first assignment of error, and for the sake of brevity, we need only address evidence elicited during Sgt. Banta's cross- and redirect-examinations.

{¶41} On cross-examination, Sgt. Banta testified that his crash-reconstruction report did not consider the weight of the semi-tractor, the angle of impact, the semi-tractor and trailer's turning radius or Rozikov's reaction time to

impact. (*Id.* at 301-302, 303). Nevertheless, Sgt. Banta testified that there was no need to know the weight differences between the semi-tractor and trailer and the SUV because momentum calculations are irrelevant to his investigation. (*Id.* at 334). Further, on redirect-examination, Sgt. Banta testified that the weight of the tractor itself would not have made a difference in his report because such weight would not impact the scuff marks. (*Id.* at 337).

{¶42} Rozikov testified as the only witness for the defense. (*Id.* at 355-356). Rozikov testified that he has been driving semi-trucks and trailers since 2011, and that he had never been involved in a serious accident. (*Id.* at 356-358). He testified that at the time of the accident he was driving a semi-truck pulling a 53-foot trailer that weighed 20,000 pounds, hauling loaded pallets that weighed approximately 9,000 pounds. (*Id.* at 358-359). According to Rozikov, he saw a Love's Truck Stop on U.S. Route 30; however, he missed the turn to the exit and was forced to merge onto U.S. Route 23. (*Id.* at 361). So, after missing his exit, he continued on U.S. Route 23 northbound looking for an intersection to make a U-turn onto U.S. Route 23 south. (*Id.*).

{¶43} Rozikov testified that just prior to executing his U-turn (from U.S. Route 23 north to U.S. Route 23 south) he was initially in the right lane, but pulled over onto the shoulder of the road for a short time to permit the cars behind him to pass. (*Id.* at 366-367). He testified that five vehicles passed him while waiting to

turn. (*Id.* at 368). Rozikov testified that when he turns the semi-truck and trailer the trailer does not always travel the same path so he turned onto State Route 42 (an intersecting road with U.S. Route 23) so his trailer would not end up in the median. (*Id.* at 368-371). Rozikov testified that before he executed this U-turn he saw only one vehicle on the roadway 500 feet or maybe a mile away, and that he did not make a U-turn from the right-hand lane of U.S. Route 23. (*Id.* at 376-377). Further, he testified that he could not pull onto U.S. Route 23 southbound because he was waiting for a car to pass by (in the left lane on U.S. Route 23 southbound) when he felt the impact, which he observed through his mirror. (*Id.* at 377-378). He testified that after the impact he exited the cab of the semi-tractor and trailer and ran to render assistance because the SUV was smoking. (*Id.* at 378).

{¶44} Rozikov testified that he attempted to open the driver's-side door, but it would not open, so upon seeing children in Kujawa's vehicle, he opened their door. (*Id.*). After the children exited the vehicle, he was asked to step aside by passersby. (*Id.* at 379). Rozikov testified that he walked to the end of his trailer and called his wife to tell her there had been a crash. (*Id.* at 380).

{¶45} Rozikov testified that after law enforcement arrived, Sgt. Carpenter put him in the back of his cruiser to write a statement. (*Id.* at 387). Rozikov asked Sgt. Carpenter if he could take pictures, but after (his request) he observed Sgt. Carpenter and other law enforcement officers sweeping the crash debris into one

location. (*Id.* at 386-387). Rozikov testified that he was unable to take photos of the scene of the crash before the crash debris was swept. (*Id.* at 387). Rozikov stated that he was instructed by his company to take "a thousand pictures". (*Id.*). Nevertheless, Rozikov was able to take about 30 pictures of the crash scene. (*Id.* at 388). Rozikov also testified that the SUV hit the axle of his trailer, and the fluid on the ground was from his semi-tractor-and-trailer axle. (*Id.* at 389-390).

{¶46} On cross-examination, Rozikov testified that he never moved the semi-tractor and trailer after the crash, and that his semi-tractor was protruding into the left lane of U.S. Route 23 southbound. (*Id.* at 391-392). Rozikov testified that Kujawa's SUV and its debris was positioned by the semi-tractor and trailer, but not where they were ultimately photographed. (*Id.* at 404-405). However, he testified that it was his responsibility, because of the size and weight of his vehicle, to be more careful in the operation of his vehicle. (*Id.* at 406).

{¶47} On appeal, Rozikov argues that the testimony of N. Marsalek (a lay witness) contradicts Sgt. Banta's report (that Rozikov's semi-truck and trailer was moved post-crash) rendering Sgt. Banta's expert opinion suspect as to the area-of-impact and the impeding of the right-of-way issues. However, the record contains the following exchange (at trial) between Rozikov's trial counsel and N. Marsalek, which addresses this issue:

[Rozikov's Trial Counsel]: Okay. Isn't it true you did not see the truck move after the impact?

[N. Marsalek]: I cannot remember.

[Rozikov's Trial Counsel]: Okay. You cannot remember.

[N. Marsalek]: If it moved after the impact.

[Rozikov's Trial Counsel]: Okay. And if I were to play that tape for you, would you be surprised to say -- or to hear that you testified -- you told the adjustor that you did not see the truck move after the accident?

[N. Marsalek]: I don't think I would be surprised --.

[Rozikov's Trial Counsel]: Okay.

[N. Marsalek]: -- due to how long it's been since then.

[Rozikov's Trial Counsel]: Okay. So is it fair to say you could not have seen the truck move after the accident.

[N. Marsalek]: I – I can't say.

(Aug. 21, 2019 Tr. Vol. I, at 116). Thus, N. Marsalek's testimony did not contradict Sgt. Banta's expert testimony or the evidence submitted to the jury.

{**¶48**} Nevertheless, even if N. Marsalek's testimony did contradict Sgt. Banta's expert opinion as to the area-of-impact and the impeding of the right-of-way, it is within the province of the jury to evaluate the credibility of the witnesses in light of any inconsistent or contradictory testimony. *See State v. Hernandez*, 8th Dist. Cuyahoga No. 104976, 2018-Ohio-738, ¶ 29, ("The jury heard the direct testimony and cross-examination of all witnesses, thus the members of the jury were in the best position to determine the credibility of each witness in light of any inconsistent or contradictory testimony"). Accordingly, based on the facts before us, it was within the province of the jury to determine the State's witnesses' testimony to be more credible than Rozikov's testimony. *See State v. Wareham*, 3d Dist. Crawford No. 3-12-11, 2013-Ohio-3191, 2013 WL 3832028, ¶ 25, ("jurors are entitled to believe the testimony offered by the State's witnesses").

{**¶49**} After our review of the record and for these reasons, we cannot conclude that the jury lost its way by determining that Rozikov while operating a motor vehicle negligently caused the death of Kujawa and created such a manifest miscarriage of justice that Rozikov's vehicular-homicide conviction must be reversed and a new trial ordered.

{**¶50**} Accordingly, Rozikov's second assignment of error is overruled.

**{¶51}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**